3:22-mj-00198

DISTRICT OF OREGON, ss:　　　　　　　　　　　　AFFIDAVIT OF SAMUEL LANDIS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Samuel Landis, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March of 2016. Currently, I work in the Seattle Field Division, Portland District Office. Prior to my employment with the DEA, I worked as a Border Patrol Agent from November 2009 to March 2016. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I received formal training at the DEA Basic Agent Training Academy in Quantico, Virginia. The 22-week training included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition to Basic Agent Training, I have completed Money Laundering Training, Traps and Concealed Compartments Training, and other various courses that have familiarized me with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations.

2. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other

individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ** for the crimes of engaging in a Conspiracy to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and Possession with Intent to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. As set forth below, there is probable cause to believe, and I do believe, that **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ** violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

## Applicable Law

4. Title 21, United States Code, Section 841(a)(1) prohibits the distribution and possession with the intent to distribute a controlled substance. Title 21, United States Code, Section 846 prohibits engaging in a conspiracy to distribute or possess with the intent to distribute a controlled substance. Cocaine is a Schedule II controlled substance.

## Statement of Probable Cause

5. On November 3, 2022, at approximately 9:30 a.m., Oregon State Police (OSP) Officer Travis Peterson contacted DEA Salem K-9 Task Force Officer (TFO) Adam Miller and advised that he recently performed a traffic stop on a white-colored BMW sedan in Medford,

Affidavit of Samuel Landis                                                                 Page 2

Oregon. Officer Peterson stated that two individuals, **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ**, occupied the vehicle. Officer Peterson stated that during his interactions with **Adolfo MARTINEZ, Jr.**, he appeared nervous and was not able to state the name of the registered owner of the BMW. Officer Peterson released the BMW shortly after completing his inspection. Officer Peterson is not a drug detection K-9 handler.

6.  At approximately 1:00 p.m., TFO Miller observed the same white-colored BMW sedan travelling north on I-5 in the area of milepost 225, which is located within Linn County, Oregon. TFO Miller subsequently stopped the BMW based on a traffic violation. During the stop, TFO Miller identified the driver as **Adolfo MARTINEZ, Jr.** via his Washington Driver's License. **Adolfo MARTINEZ, Jr.** stated that the vehicle belonged to his aunt; however, when TFO Miller asked for the name of the aunt, **Adolfo MARTINEZ, Jr.** was only able to state her first name. **Adolfo MARTINEZ, Jr.** stated that he and the passenger, **Carlos Alberto MARTINEZ**, his brother, recently returned from a week-long trip to Southern California, where they stayed at a hotel. TFO Miller had received information that the car had in fact only been in Southern California for a couple of days. TFO Miller noted there was a tan-colored bag in the back seat of the vehicle, which **Adolfo MARTINEZ, Jr.** claimed it only contained their clothing. Both **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ** told TFO Miller that everything in the car was theirs. TFO Miller asked **Adolfo MARTINEZ, Jr.** for consent to search the BMW. **Adolfo MARTINEZ, Jr.** declined. TFO Miller then asked **Adolfo MARTINEZ, Jr.** if he could use his K-9 partner to perform a sniff around the exterior of the BMW. **Adolfo MARTINEZ, Jr.** stated that there was no reason to use a K-9 on the vehicle. Both the driver and passenger were asked to step out of the car.

7. TFO Miller subsequently deployed his trained narcotics detecting K-9 near/around the BMW. Shortly thereafter, the K-9 demonstrated a positive alert to the presence of the odor of narcotics emanating from the rear of the vehicle. Following the positive K-9 alert, TFO Miller searched the car. TFO Miller first looked inside of the tan-colored bag in the back seat. Inside, the tan-colored bag in the back seat TFO Miller located a loaded 10mm caliber Glock handgun. Within the same bag, TFO Miller also located two additional fully loaded 10mm caliber magazines. **Adolfo MARTINEZ, Jr.** told TFO Miller that the gun was his and that he had a permit for it.

8. During a search of the trunk, TFO Miller observed various nutrition supplements, a case of energy drinks, a backpack, an Igloo cooler, and a suitcase. TFO Miller searched the backpack, Igloo cooler, and the suitcase, and located 38 separate plastic-wrapped and vacuum-sealed packages containing a white substance. The 38 packages, while having different markings, all appeared to be approximately the same size. Approximately five of the packages were weighed individually and each ranged between 1,150 to 1,250 grams each. The packages were all wrapped in plastic and appeared to be coated in grease, which is commonly used by traffickers to attempt to hide the odor of the cocaine. The suspected drugs were seized and, in total with DEA packaging, weighing approximately 44,000 grams. Later, investigators field-tested nine (9) of the 38 packages each of which provided a presumptive positive result for the presence of cocaine, a Schedule II controlled substance. Based on the similarities of the packages I believe all of the packages contain roughly the same amount of cocaine. I also know, from my training and experience, that cocaine is typically shipped in kilogram quantities. A picture of the seized drugs is below:





9.    After locating the suspected bulk narcotics, but before they were tested, TFO Miller read **Adolfo MARTINEZ, Jr.** his *Miranda* Warnings and asked him if the packages contained

**Affidavit of Samuel Landis**        **Page 5**

fentanyl. **Adolfo MARTINEZ, Jr.** replied, "I plead the fifth." **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ** were subsequently arrested and transported to the Salem Resident Officer for further processing.

10. Based on my training and experience, I know that addicts often snort cocaine and that it is often used in smaller gram-size quantities or it is converted into "crack," a highly addictive version of the drug. A typical user of cocaine will often use less than a gram of cocaine at a time. Based upon my training and experience, I know that approximately 38 kilograms of cocaine is not a user quantity but rather indicates it is possessed for purposes of further distribution. Furthermore, the way the cocaine was packaged in kilogram bags is also indicative of possession with the intent to distribute. I know that, between larger dealers, a kilogram of cocaine can sell for between $30,000 to $40,000 a kilogram and given its valuable nature, drugs in large quantities such as this are not given or entrusted to unwitting individuals. While this price is subject to fluctuation, approximately 38 kilograms of cocaine has a rough value of more than $1,000,000.

## Conclusion

11. Based on the foregoing, I have probable cause to believe, and I do believe, that on or about November 3, 2022, within the District of Oregon, **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ** knowingly and intentionally Conspire to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did knowingly and intentionally possess with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

I therefore request that the Court issue a criminal complaint and arrest warrant for **Adolfo MARTINEZ, Jr.** and **Carlos Alberto MARTINEZ**.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/S/ *By Phone*

SAMUEL LANDIS
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __9:48__ a.m./p.m. on November 3, 2022.

*Youlee Yim You*
HON. YOULEE YIM YOU
United States Magistrate Judge